**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANA HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-04755 |
| | ) | |
| v. | ) | Judge John J. Tharp |
| | ) | |
| OAK STREET HEALTH MSO LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff's Complaint should be dismissed in its entirety because the Complaint fails to identify any acts of alleged discrimination, harassment, and/or retaliation which, if proven true, would be actionable under either Title VII or Section 1981. Accordingly, Defendant Oak Street Health MSO, LLC ("Oak Street Health"), by its attorneys, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Dana Horton's ("Plaintiff") Complaint in the above-captioned case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.

## I.  INTRODUCTION

Oak Street Health is comprised of community-based healthcare facilities that provide healthcare services to patients receiving Medicare benefits, primarily in underserved communities where there is little to no quality healthcare.

On September 6, 2022, Plaintiff filed a four-count Complaint against Oak Street Health alleging: (1) racial discrimination in violation of Section 1981, 42 U.S.C. § 1981 (Count I); (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S. § 2000e, *et. seq.* (Count II); (3) racial harassment in violation of Title VII, 42 U.S.C. § 2000e, *et.*

*seq.* (Count III); and (4) retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et. seq.* (Count IV).

Each of the four (4) counts set forth in Plaintiff's Complaint should be dismissed because the allegations in the Complaint show that Plaintiff's claims are based on things that are not severe or pervasive and the Complaint fails to identify any acts of alleged discrimination, harassment and/or retaliation which, if proven true, would be actionable under either Title VII or Section 1981.

## II.    ALLEGATIONS IN THE COMPLAINT

Plaintiff began working with Oak Street Health on August 1, 2021, as an Outreach Director. *See* Cmplt. ¶ 12.  Plaintiff alleges that throughout her employment, she was subjected to a hostile work environment and different terms and conditions of employment based on her race, as Plaintiff asserts that she was the only African American employee working at her Oak Street Health location. *See* Cmplt. ¶¶ 13-15.  In support of her race claims, Plaintiff alleges that other employees would not speak English around her – speaking only in Spanish – and when she mentioned the low percentage of African American employees and suggested that employees undergo diversity training, she believes that she was subjected to retaliation in the form of being told to "ask when to speak in meetings."  *See* Cmplt. ¶¶ 16-18.

Plaintiff further alleges that she was mocked (undefined) by managers, who told her that only the African American patients were "loud and rude."  *See* Cmplt. ¶¶ 16-18.  According to Plaintiff, she reported to Human Resources her belief that Hispanic employees had been abusing African American patients and no steps had been taken to address that alleged abusive conduct. *See* Cmplt. ¶ 20.

Plaintiff alleges that Hispanic employees refused to correctly pronounce African American patients' names, and she had to diffuse altercations between Hispanic employees and African American patients.  *See* Cmplt. ¶¶ 21-22.  Plaintiff states that in March 2022, Oak Street Health's

Regional Manager spoke with Plaintiff about these issues and told Plaintiff that: "We do have a black and brown problem here." *See* Cmplt. ¶ 23.

Plaintiff alleges that, on March 23, 2022, she was forced to quit her job due to the working conditions and, during her exit interview, she alleges to have stated that she had confronted management with racial issues, but management failed to correct or remedy the situation. *See* Cmplt. ¶¶ 24-25.

## III. RULE 12(B)(6) LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). To withstand a Rule 12(b)(6) motion, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief beyond the "speculative level," assuming that all of the allegations in the complaint are true. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). Allegations in the form of legal conclusions are insufficient to survive a motion to dismiss under Rule 12(b)(6). *RLJ Lodging Trust v. Nat'l Ret. Fund*, 2018 U.S. Dist. LEXIS 143911, *8 (N.D. Ill. 2018).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn from them. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005) ("A judicial

admission trumps evidence. This is the bases of the principle that a plaintiff can plead himself out of court.").

## IV.    ARGUMENT

### A.    Counts I – II, Alleging Race Discrimination Pursuant To § 1981 And/Or Title VII Must Be Dismissed Because The Conduct Alleged Does Not Rise To The Level Of Actionable Conduct.

#### 1.    Title VII And § 1981 Have Key Similarities.

"The legal analysis for discrimination claims under Title VII and § 1981 is largely identical." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022); *see also Bratton v. Roadway Package System Inc.*, 77 F.3d 168, 176 (7th Cir. 1996) (Title VII and Section 1981 claims are analyzed using the same *prima facie* case). Barring direct evidence, when asserting a claim under either theory of recovery, the plaintiff must show that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment (or contract) action; and (4) her employer treated similarly situated employees outside her protected class more favorably. *See Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). For the foregoing reasons, Plaintiff's two (2) discrimination claims separately brought under Title VII and § 1981, *i.e.*, Counts I – II, will be discussed together.

#### 2.    Counts I – II Must Be Dismissed Because Plaintiff Has Not Alleged An Adverse Employment Action.

Title VII and Section 1981 "do[] not forbid every act of invidious discrimination that an employer might commit against an employee." *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 743 (7th Cir. 2002). To establish that she has suffered an actionable adverse employment action, a plaintiff must show that her compensation, fringe benefits, or other financial terms of employment were diminished or the termination of her employment. *Id*. at 743-44. Thus, there must be "a tangible employment action," that is, "a significant change in employment status." *Id*.

at 744.  In *Herrnreiter*, the Seventh Circuit refused to recognize non-tangible employee gripes as actionable.  *Id.*  ("Plaintiff" interprets these paraphrases to mean *any* action that displeases the employee.  If he is right, one dirty look would be enough to trigger liability under Title VII.  The language that we have quoted from the statute and the case law does not support his interpretation.") (Emphasis in original).  This narrow approach must be enforced "otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* at 745.

Counts I – II of Plaintiff's Complaint should be dismissed, as the Complaint does not allege that Plaintiff has endured any adverse employment action on the basis of her race.  To the contrary, Plaintiff complains about a laundry list of things that have nothing to do with any tangible changes in the terms and conditions of her employment, *i.e.*, except for Plaintiff (who is African American), an all-Hispanic workforce spoke to each other in their native tongue (*see* Cmplt. ¶¶ 15-16), after suggesting diversity training for all employees, two managers allegedly told Plaintiff to "ask when to speak in meetings" (*see* Cmplt. ¶¶ 16-18), being told that only the African American patients were "loud and rude" (*see* Cmplt. ¶¶ 16-18), allegedly observing that Hispanic employees refused to correctly pronounce African American patients' names, and she had to diffuse altercations between Hispanic employees and African American patients (s*ee* Cmplt. ¶¶ 21-22), and allegedly being told that: "We do have a black and brown problem here"  (*see* Cmplt. ¶ 23).

None of the above allegations -- individually or collectively -- "show that [Plaintiff's] compensation, fringe benefits, or other financial terms of employment were diminished or the termination of her employment."  *Herrnreiter*, 315 F.3d at 743 – 44.  Furthermore, Plaintiff's complaint that Oak Street Health failed to prohibit Hispanic employees from talking to each other in their native language is tantamount to a request that an employer impose an "English-only"

policy unrelated to business operations, workplace safety, or any other legitimate business reason. Under similar circumstances, the EEOC has *directly* sued employers for not allowing employees to speak in their native tongue. *See EEOC v. Synchro-Start Prods.*, 29 F. Supp. 2d 911, 913 (N.D. Ill. 1999) (denying the employer's motion to dismiss and holding: "[The] EEOC has promulgated a Guideline specifically addressing English-only rules: Under 29 C.F.R. § 1606.7, an English-only rule such as [this employer's] violates Title VII unless the employer can establish a business necessity for the rule." . . . "This Court is also bound to give substantial weight to the EEOC's interpretation of the statute that it administers."). Counts I – II, therefore, fail as a matter of law because Plaintiff has not identified an actionable adverse employment action. *See*, *e.g.*, *Gaston v. Bd. of Educ.*, No. 17-cv-1024, 2017 U.S. Dist. LEXIS 119481, at *11 (N.D. Ill. July 31, 2017) (granting the motion to dismiss and holding: "In discrimination cases, adverse employment actions are confined to tangible impacts with respect to an employee's compensation, terms, conditions, or privileges of employment."); *Veljkovic v. Bd. of Edu.*, No. 20-cv-1551, 2020 U.S. Dist. LEXIS 240690, at *13-14 (N.D. Ill. Dec. 22, 2020) (allegations that the plaintiff "was subjected to disparagement," had been "besmirched" by being the subject of false and racially motivated performance reviews, had been excluded from key communications, and that coworkers stopped interacting with plaintiff were unable to withstand a motion to dismiss for failing to identify an adverse employment action).

> **3.** **Count III, Asserting Racial Harassment Pursuant To Title VII, Must Be Dismissed Because Isolated Comments And Personal Gripes Held By The Employee Do Not Rise To The Level Of Actionable Harassment**.

To satisfy the high actionable standard, workplace harassment claims tied to race must consist of conduct that was severe or pervasive as to have altered the conditions of the employee's work environment. *See Cole v. Bd. of Trs.*, 838 F.3d 888, 895-97 (7th Cir. 2016) (hangman's

noose found by the only African American foreman insufficient to meet the high standard where the noose was not tied to other acts of overt racial hostility). In determining whether the conduct is sufficiently severe or pervasive to be actionable, courts look at the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim. *See Lambert v. Peri Formworks Sys., Inc*., 723 F.3d 863, 868 (7th Cir. 2013). Plaintiff's allegations, *in totus*, fail to satisfy any of the applicable standards for harassment.

First, the alleged harassment in the Complaint consists of five (5) incidents (or related tame incidents) spanning the entirety of Plaintiff's employment, *i.e*., Plaintiff alleges that: (i) co-workers spoke in their native tongue in her presence and did not interact with her; (ii) two managers engaged in undefined mocking and mentioned that the African American patients were loud and rude; (iii) Hispanic employees refused to correctly pronounce African American patients' names; and (iv) a manager told her we have a black and brown problem here. *See* Cmplt., ¶¶ 16, 19, 21, and 23. These alleged, isolated incidents were not pervasive conduct recognized by Title VII or Section 1981. *See*, *e.g*., *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (holding that a few ambiguous comments, amongst other things, were not sufficiently severe or pervasive to be actionable); *Sowers v. VVF Ill. Servs., LLC*, No. 18-cv-6496, 2019 U.S. Dist. LEXIS 72834, at *8-9 (N.D. Ill. April 30, 2019) (motion to dismiss granted where teasing and an unwarranted search of personal belongings were not deemed severe or pervasive).

Second, a reasonable person would not have deemed these alleged slights (some of which were allegedly directed at other people) offensive/severe enough to rise to the level of actionable

conduct. For example, in *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594 (7th Cir. 2014), in identifying what constitutes highly offensive conduct, the Seventh Circuit pointed to racial epithets by coworkers and supervisors, where coworkers openly advocated for the Ku Klux Klan and "white power," and racially offensive graffiti was written on the bathroom walls such as "sp-cs," "wetb--ks," "go back to Mexico," and "Tony Cerros is a sp--c." *Id*. at 602 (citing *Cerros v. Steel Techs., Inc*., 398 F.3d 944 (7th Cir. 2005)). By contrast, also in *Nichols*, the Seventh Circuit pointed to allegations that a supervisor referring to "black music as 'wicka-wicka woo' music," an employee's request to investigate an African-American guest who was allegedly stealing coins from a fountain, African-American guests being denied additional ice and cups at a party, one incident where a co-worker used the word "n----r" in the plaintiff's presence, a supervisor asked a white co-worker to carry money when Peters and another African-American worker were present and available to do the job, the human resources director failed to say hello to plaintiff or another African-American worker, and "interracial strife" that was revealed at a diversity training as being only "mildly offensive," with the exception of the use of the word "n----r." *See Nichols*, 755 F.3d at 603 (citing *Peters v. Renaissance Hotel Operating Co*., 307 F.3d 535 (7th Cir. 2002) (decided in favor of the employer). Here, there are no allegations of racially charged conduct or the use of slurs in the workplace.

Third, there is nothing "physically threatening or humiliating" about the conduct alleged in the Complaint.

Fourth, the Complaint does not allege, or even suggest, that any conduct complained of impacted or otherwise unreasonably interfered with Plaintiff's ability to do her job.

Finally, as was the case with the unsuccessful plaintiff in *Peters*, many of the gripes identified by Plaintiff concerned other people, *i.e.*, African American patients, not Plaintiff.

It bears repeating, none of these allegations are racially charged with slurs or other prohibited verbal and/or non-verbal overtures. The isolated incidents that Plaintiff relies upon are neither severe nor pervasive and are not sufficient to entitle Plaintiff to relief under either Title VII or § 1981. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (offhand comments and isolated incidents of offensive conduct do not rise to the level of actionable harassment); *Williams v. City of Chicago*, 2017 U.S. Dist. LEXIS 116730, *11-2 (N.D. Ill. 2017) ("Not everything that makes an employee unhappy is an actionable adverse action. . .") (citing *Thompson v. Mem'l Hosp. or Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010)). The standard for a hostile work environment is high, and "relatively isolated instances of non-severe misconduct will not support a hostile environment claim." *Saxton v. American Tel. & Tel. Co*., 10 F.3d 526, 533 (7th Cir. 2000).

Under similar circumstances, Illinois courts have not hesitated to dismiss harassment claims. *See*, *e.g*., *Dodgen v. AARP*, 2022 U.S. Dist. LEXIS 178814, at *11-12 (N.D. Ill. Sept. 30, 2022) (motion to dismiss granted where allegations of reprimands, unfair scrutinization, and negative reviews failed to meet the high standard); *Muhammad v. Univ. of Chi*., No. 16-cv-09998, 2019 U.S. Dist. LEXIS 240066, at *3 (N.D. Ill. Mar. 31, 2019) (granting motion to dismiss where the plaintiff failed to allege sufficiently that the defendants' conduct interfered with her ability to do her job); *Winters v. Hamos*, No. 16-cv-10777, 2018 U.S. Dist. LEXIS 119685, at *11 (N.D. Ill. July 18, 2018) (motion to dismiss granted where allegations that the employer denied plaintiff training, failed to give him performance reviews, gave plaintiff baseless poor reviews, gave him an excessive workload, denied plaintiff's Flex Time, and suspended plaintiff for seven days were collectively deemed insufficient to plead a viable hostile work environment claim).

**B.**      **Plaintiff Has Not Presented Allegations Sufficient Under Title VII Or § 1981 To Save Her Constructive Discharge Claim, And Thus, It Must Be Dismissed.**

Plaintiff's allegations concerning her constructive discharge claim should be dismissed because the Complaint fails to state an actionable claim.   Under *Pennsylvania State Police v. Suders*, the Supreme Court held that a former employee's reasoning for terminating his/her own employment must satisfy an objective standard that centers around whether a reasonable person would have felt compelled to resign from his or her position under similar circumstances.   542 U.S. 129, 141 (2004) ("Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?").   The "[Seventh Circuit] has recognized two different forms of constructive discharge" that satisfy *Suders*.   *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).   These instances are when: (1) an employer makes an employee's working conditions so intolerable that resignation qualifies as a fitting response; or (2) the employer has communicated that his or her employment would be terminated in the immediate future.   *Id.*   To succeed, under the first form of constructive discharge, Plaintiff would have to show that her working conditions were "even more egregious than that required for a hostile work environment claim."   *Fields v. Bd. of Educ. of Chi.*, 2017 U.S. Dist. LEXIS 150455, *10 (N.D. Ill. 2017) (internal citations omitted).

For instance, constructive discharge claims have succeeded where physical threats, or racist comments, are routine and regular.   *See, e.g., Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir. 1989) (constructive discharge recognized where the supervisor showed the employee several extremely offensive pornographic photographs, grabbed her arm when she attempted to seize a copy, and threatened to kill her). However, occasional remarks or conduct, even if offensive, are not sufficient to meet the high threshold the law has placed on constructive discharge claims.   *See Tutman v. WBBM-TV,*

*Inc./CBS, Inc.*, 209 F.3d 1044, 1046 (7th Cir. 2000).  The Complaint is devoid of allegations which, if accepted as true, would satisfy this objective standard.  Because the Complaint does not come close to alleging an objective, actionable claim of constructive discharge, dismissal is appropriate. *See Gilhooly v. UBS Sec*., LLC, 772 F. Supp. 2d 914, 918 (N.D. Ill. 2011) (granting motion to dismiss where allegations that the employer's "constant criticism and harassment about [plaintiff's] work left her with little choice but to resign" . . . did "not give rise to a plausible inference that the workplace conditions were so intolerable that a reasonable person would have been compelled to resign.").

With respect to sufficient allegations showing that an employer's conduct made a reasonable person believe that the employer intended to immediately terminate the employment relationship, *EEOC v. University of Chicago Hospitals*, 276 F.3d 326 (7th Cir. 2002), is instructive. There, a constructive discharge was found because the employee arrived at work to find her personal belongs packed way and her now former office being used for storage purposes.  *Id*. at 332.

No such explicit (or even implicit) employer conduct, *i.e.*, impending discharge, is alleged in the Complaint; therefore, dismissal is appropriate.  *See McCann v. Earth Sense Energy Sys*., No. 16-cv-1310, 2017 U.S. Dist. LEXIS 59033, at *6 (E.D. Wis. April 18, 2017) (granting the motion to dismiss and holding that: "[T]there is nothing to indicate that a firing here was an imminent and inevitable event.") (citing *Chapin v. Fort-Rohr Motors, Inc*., 621 F.3d 673, 680 (7th Cir. 2010)).

**C.     Count IV Alleging Retaliation Under Title VII Must Be Dismissed Because Plaintiff Has Not Pled A Materially Adverse Employment Action By Oak Street Health.**

As a threshold matter, the arguments in Section IV(B), *supra*, establish that there has been no constructive discharge.  For that reason, this section will not discuss employment actions that

are not attributable to Oak Street Health, *i.e.*, Plaintiff's unilateral decision to end her employment at Oak Street Health.

Count IV of Plaintiff's Complaint should be dismissed, as the Complaint fails to plead a viable claim of retaliation. As there are no allegations of retaliation based on direct evidence, this Motion will focus on the in direct method of establishing retaliation, which requires Plaintiff to establish that: (1) she engaged in protected activity; (2) she was meeting the employer's legitimate performance expectations; (3) she was subjected to a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Under either method, Plaintiff is required to establish at minimum that she was subjected to a materially adverse employment action, which she cannot do.

In her Complaint, Plaintiff pleads that she was told to "ask when to speak at meetings" on September 1, 2021 when she suggested that the workplace undergo diversity training. *See* Compl. ¶¶17-18. This is not cognizable as a materially adverse action to support a viable retaliation claim because Title VII is not a "general civility code" that regulates the workplace. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). This means that the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67. "[I]n this context [actionable harm] means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at 68. This standard is applied to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor

annoyances that often take place at work and that all employees experience." *Id*. at 68 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Plaintiff's allegation that she was told to "ask when to speak at meetings" when she suggested that the workplace have diversity training conducted (*see* Cmplt. ¶¶ 17-18), just like her allegations that: (i) employees would not speak with her and would walk away when she complained about them speaking only in Spanish in her presence (*see* Cmplt. ¶ 16); and (ii) she was told that "We have a black and brown problem here" when she complained about the Hispanic staffers' treatment of African American patients (*see* Cmplt. ¶¶ 22-23) are non-actionable and merely constitute "petty slights or minor annoyances that often take place at work." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68.

The dismissal of Plaintiff's retaliation claim is appropriate because she has not endured any material adverse employment action. *See, e.g.*, *Marijan v. Univ. of Chi.*, No. 17-cv-9361, 2018 U.S. Dist. LEXIS 211503, at *13 (N.D. Ill. Dec. 17, 2018) (motion to dismiss granted where a lateral transfer was deemed insufficient to constitute a material adverse employment action); *Jackson v. Filtran, LLC*, No. 15-cv-3468, 2016 U.S. Dist. LEXIS 85927, at *7-8 (N.D. Ill. June 30, 2016) (allegations of the issuance of verbal discipline and retaliatory harassment deemed insufficient to withstand motion to dismiss); *Ross v. UChicago Argonne, LLC*, No. 18-cv-4200, 2020 U.S. Dist. LEXIS 74228, at *35-36 (N.D. Ill. April 28, 2020) (motion to dismiss granted where the allegations pled did not show any material consequences caused by the challenged employment actions, *i.e.*, being excluded from work meetings, receiving verbal reprimands, being issued an insulting performance review, and being advised to purchase a grammar book).

Because Plaintiff has not been subjected to any materially adverse employment action, she cannot show that any similarly situated employee was not subjected to that same (non-existent) materially adverse action, *i.e.*, received preferential treatment, under similar circumstances.

## V.    CONCLUSION

For the reasons set forth above, and in Oak Street's Motion to Dismiss Plaintiff's Complaint, Defendant Oak Street Health, MSO, LLC respectfully requests that this Court grant its Motion to Dismiss the Complaint, and grant any additional relief to Oak Street Health as the Court deems just and proper.

Dated:  November 11, 2022

Oak Street Health Clinic MSO, LLC, Defendant

By:    /s/Brian K. Jackson
     Brian K. Jackson
     One of Its Attorneys

Brian K. Jackson
Samantha K. Buddig
LANER MUCHIN, LTD.
515 North State Street, Suite 2800
Chicago, IL 60654
(312) 467-9800 / (312) 467-9429 (fax)

Attorneys for Oak Street Health Clinic
MSO, LLC

## CERTIFICATE OF SERVICE

Brian K. Jackson, an attorney, hereby certifies that he caused the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS** in the above-captioned matter to be served via the electronic filing system to the Clerk of the Court and via the electronic filing system to the parties of record listed below, on this 11th day of November 2022:

> Nathan C. Volheim
> Chad W. Eisenback
> Eric D. Coleman
> Sulaiman Law Group, Ltd.
> 2500 S. Highland Ave., Ste. 200
> Lombard, IL 60148

/s/ Brian K. Jackson
Brian K. Jackson
